**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
NEWTON GREGORIO,                )
                                )
                Plaintiff,      )
                                )
        v.                      )    Civil Action No. 16-782 (EGS)
                                )
STANLEY K. HOOVER, and          )
CHESAPEAKE DISTRICT OF THE      )
WESLEYAN CHURCH,                )
                                )
                Defendants.     )
_____)

### MEMORANDUM OPINION

Newton Gregorio, co-founder of the Capital Wesleyan Church ("Capital"), brings this action individually and as the Pastor and Minister in Charge of Capital against the Chesapeake District of the Wesleyan Church ("Chesapeake") and Stanley K. Hoover, Chesapeake's Superintendent. Mr. Gregorio asserts claims of breach of contract, unjust enrichment, wrongful eviction, defamation, and age discrimination. Defendants have moved to dismiss Mr. Gregorio's complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted. Upon consideration of the motion, the response and reply thereto, the applicable law, and for the reasons discussed below, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

1

I.   **Background**

The facts alleged in the complaint are as follows. In 1995, Newton Gregorio and his wife, Lynette Gregorio, co-founded the Capital Inner City Outreach Ministry, which they later incorporated as the Capital Wesleyan Church. Compl., ECF No. 1-1 ¶ 6. Capital adopted and affiliated itself with Wesleyan religious doctrines and principles but retained its organizational, administrative, and pastoral independence vis-à-vis the national Wesleyan Church and the national Church's mid-Atlantic regional subsidiary, the Chesapeake District of the Wesleyan Church. *Id.* ¶¶ 6-8.

Despite that independence, Chesapeake procured a loan in the amount of $110,000 from the Wesleyan Investment Foundation ("WIF") to be used for the purchase of property at 3831 14th Street, Northwest, Washington, D.C., and Capital and Chesapeake co-signed the promissory note related to that loan. *Id.* ¶ 7. The Deed of Trust, however, was in Chesapeake's name only, and Chesapeake holds title to the property. *Id.* ¶¶ 7, 9. At some point, Capital and Chesapeake "entered into an agreement" related to the 3831 14th Street property that provided that Chesapeake would secure and arrange the financing to purchase the property; that Capital would be responsible for repaying the loan; that Chesapeake would hold title to the property while the loan was in repayment "to protect against Capital's default on

2

the loan"; and that, when the loan was repaid, Chesapeake would "relinquish the title to the property to Capital free and clear of any encumbrances." *Id.* ¶¶ 18, 21. By 2005, Capital, using "the funds of the Capital membership without any contribution from Chesapeake," had fully repaid the loan, but since that time Chesapeake has refused to transfer title to Capital. *Id.* ¶¶ 9, 16, 19, 21.

Chesapeake also obtained financing to purchase an adjacent property at 3829 14th Street, Northwest, Washington, D.C. and entered into a "special arrangement" with Capital "whereby the property would be owned by Chesapeake, but Capital would be responsible for payment of the [p]romissory [n]ote on the property." *Id.* ¶¶ 17, 31.[1] Thus, Mr. Gregorio "raised the funds to pay for" the 3829 14th Street property. *Id.* ¶ 10. Those payments were made until Chesapeake took action in the spring and summer of 2015 to remove Mr. Gregorio from his positions as Pastor and Minister in Charge of Capital. *See id.* ¶ 31.

Mr. Gregorio had held those positions along with his wife until she passed away in 2011. *See id.* ¶¶ 7, 10. After Mr. Gregorio's wife's passing, Stanley K. Hoover, the District Superintendent for Chesapeake, formally appointed Mr. Gregorio

---

[1] Mr. Gregorio's complaint has two consecutive paragraphs numbered "17." To avoid confusion, the Court will construe both paragraphs to constitute a single paragraph 17.

as Minister in Charge of Capital. *Id.* ¶ 10. Although Mr. Gregorio maintains that Mr. Hoover and Chesapeake had no authority to determine who was Minister in Charge of Capital, Mr. Gregorio accepted the appointment and, concurrent with it, accepted a stipend of $1,500 per month. *See id.* ¶¶ 10-11. Mr. Gregorio stopped receiving that stipend in October 2012. *Id.* ¶ 11.

On April 29, 2015, Mr. Hoover informed Mr. Gregorio that it was time for Mr. Gregorio to retire because Chesapeake had "younger people" capable of taking his place and that his last day as Minister in Charge would be May 31, 2015. *Id.* ¶ 12. Mr. Gregorio, however, continued to assert his authority to act as Minister in Charge. *Id.* Chesapeake and Mr. Hoover responded by changing the locks to the buildings on the 3829 and 3831 14th Street properties without notice to Mr. Gregorio. *Id.* ¶ 13. On June 26 and July 2, 2015, Chesapeake and Mr. Hoover sent a letter to law enforcement authorities in the District of Columbia and Maryland stating that Mr. Gregorio "had made illegal and unauthorized entry onto the properties" and informed Mr. Gregorio that he would be subject to arrest if he attempted to enter them again. *Id.* ¶¶ 14, 38, 40.

Mr. Gregorio, individually and as Pastor and Minister in Charge of Capital,[2] alleges six counts against Chesapeake and Mr. Hoover: (1) breach of contract based on defendants' failure to convey title to the 3831 14th Street property to Capital pursuant to the agreement to carry out such a transfer upon Capital's repayment of the WIF loan, *id.* ¶¶ 17-22; (2) loss of wages based on defendants' failure to pay the promised monthly stipend of $1,500 starting in October 2012, *id.* ¶¶ 23-26; (3) unjust enrichment based on defendants' retention of the title to the 3831 14th Street property despite Capital's repayment of the relevant loan, and unjust enrichment based on defendants' acceptance of Capital's payments on the loan pertaining to the 3829 14th Street property, *id.* ¶¶ 27-31; (4) wrongful eviction based on defendants changing the locks to the buildings on the properties in order to prevent Mr. Gregorio from accessing them, *id.* ¶¶ 32-26; (5) defamation based on the letter defendants disseminated to law enforcement authorities that stated that Mr.

---

[2] In a footnote and without citation to any legal authority, defendants argue that Mr. Gregorio "lacks the capacity to sue as the pastor of Capital." *See* Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 7-1 at 6 n.1. This Court "'need not consider cursory arguments made only in a footnote.'" *Alsawam v. Obama*, 864 F. Supp. 2d 1, 5 (D.D.C. 2012) (quoting *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc)). Accordingly, the Court declines to consider defendants' footnoted, unsupported argument concerning Mr. Gregorio's capacity to bring claims on behalf of the entity that he co-founded and incorporated.

Gregorio had illegally entered onto the properties, *id.* ¶¶ 37-
41; and (6) age discrimination based on Mr. Hoover forcing Mr.
Gregorio to retire from his position at Capital because younger
people were able to take his place. *Id.* ¶¶ 42, 45-47.

Defendants removed the case to this Court, *see* Notice of
Removal, ECF No. 1, and have moved to dismiss the claims against
them because, they argue, this Court lacks subject matter
jurisdiction or, in the alternative, because Mr. Gregorio has
failed to state a claim upon which relief can be granted. *See
generally* Defs.' Mot. to Dismiss, ECF No. 7. Defendants' motion
is now ripe and ready for the Court's adjudication.

## II. Legal Standards

### A. Rule 12(b)(1)

"A federal district court may only hear a claim over which
[it] has subject matter jurisdiction; therefore, a Rule 12(b)(1)
motion for dismissal is a threshold challenge to a court's
jurisdiction." *Metro. Washington Chapter v. District of
Columbia*, 57 F. Supp. 3d 1, 13 (D.D.C. 2014). To survive a Rule
12(b)(1) motion to dismiss, "the plaintiff bears the burden of
establishing jurisdiction by a preponderance of the evidence."
*Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C.
2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561
(1992)). Because Rule 12(b)(1) concerns a court's ability to
hear a particular claim, "the court must scrutinize the

6

plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.   Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (internal quotation marks omitted). The plaintiff need not plead all of the elements of a prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted), and the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Even so, the court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal

conclusions cast in the form of factual allegations." *Id.*
Further, "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements" are not
sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

"In determining whether a complaint states a claim, the
court may consider the facts alleged in the complaint, documents
attached thereto or incorporated therein, and matters of which
it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508
F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks
omitted). Among the documents subject to judicial notice on a
motion to dismiss are "public records." *Kaempe v. Myers*, 367
F.3d 958, 965 (D.C. Cir. 2004).

### C.   First Amendment Religious Entanglement Doctrines

Relying on two doctrines rooted in the First Amendment's
Religion Clauses——the ministerial exception and the
ecclesiastical abstention doctrine——defendants argue that Mr.
Gregorio's claims are inextricably intertwined with religious
matters such that this Court, pursuant to Rule 12(b)(1), does
not have subject matter jurisdiction over them. *See* Defs.' Mem.
in Supp. of Mot. to Dismiss ("Defs.' Mem. Supp."), ECF No. 7-1
at 6-7. Although both of these doctrines can warrant dismissal
of claims on First Amendment grounds, the ministerial exception
"operates as an affirmative defense to an otherwise cognizable
claim, not a jurisdictional bar." *Hosanna-Tabor Evangelical*

*Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 n.4 (2012). Accordingly, defendants' ministerial exception arguments are properly analyzed under a Rule 12(b)(6), rather than a Rule 12(b)(1), lens. *See Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 171 (5th Cir. 2012). However, without definitive guidance otherwise from the Supreme Court or the D.C. Circuit, the Court will analyze defendants' arguments under the ecclesiastical abstention doctrine——which is "related" to but "distinct" from the ministerial exception, *see Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 248 n.7 (S.D.N.Y. 2014)——under a Rule 12(b)(1) lens, as that approach is consistent with the long-standing practice of treating questions of ecclesiastical entanglement as jurisdictional. *See id.*

The ecclesiastical abstention doctrine is grounded in a "long line of Supreme Court cases that affirm the fundamental right of churches to 'decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 462 (D.C. Cir. 1996) (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952)). Accordingly, the doctrine "limit[s] the role of civil courts in the resolution of religious controversies that incidentally affect civil rights," *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710 (1976), and "severely

10

circumscribes the role that civil courts may play in resolving church property disputes." *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969). Even so, "not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment." *Id.* Thus, "a State may adopt *any* one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith." *Jones v. Wolf*, 443 U.S. 595, 602 (1979) (internal quotation marks omitted). The District of Columbia has adopted the neutral principles approach to resolve church property disputes. *Family Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 249 (D.C. 2015). Under that approach, a court "relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges," thereby keeping it free "from entanglement in questions of religious doctrine, polity, and practice." *Jones*, 443 U.S. at 603. As long as its analysis avoids judicial entanglement with religious doctrine, a court under the neutral principles approach can appropriately assess various documents, including deeds, corporate charters, and church constitutions. *See Md. & Va. Eldership of the Churches of God v. Church of God at Sharpsburg, Inc.*, 396 U.S. 367, 367-68 (1970) (holding that a court's resolution of a church property

dispute did not involve an inquiry into religious doctrine when the court had assessed the language in deeds, the terms of corporate charters, and the terms of a church's constitution).

The related ministerial exception "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor*, 565 U.S. at 188. "The exception . . . ensures that the authority to select and control who will minister to the faithful—a matter strictly ecclesiastical—is the church's alone." *Id.* at 194-95 (internal quotation marks and citation omitted). The Supreme Court has expressed no view on whether the exception bars claims other than employment discrimination claims. *Id.* at 196. In this Circuit, the exception does not bar a breach of contract claim when resolution of such a claim is "subject to entirely neutral methods of proof." *Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354, 1359-61 (D.C. Cir. 1990).

## III. Analysis

### A.   Age Discrimination

Mr. Gregorio alleges that defendants discriminated against him on the basis of age because Mr. Hoover forced him to retire from his positions as Pastor and Minister in Charge of Capital by telling him that he needed "to retire" because there were

12

"younger people" to take his place. Compl., ECF No. 1-1 ¶¶ 12, 45. Defendants argue that Mr. Gregorio's age discrimination claim is barred because whether he makes this claim under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code. § 2-1401.01 *et seq.*, or the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, he has failed to exhaust his administrative remedies. Defs.' Mem. Supp., ECF No. 7-1 at 30-31. In response to this argument, Mr. Gregorio maintains that his age discrimination claim is not brought pursuant to the DCHRA or the ADEA but rather should be "taken in connection with his defamation claims and breach of contract claims." Pl.'s Mem. in Supp. of Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp."), ECF No. 11 at 9. Although it is not entirely clear what Mr. Gregorio means by his assertion that his age discrimination claim should be "taken in connection with" certain of his other claims, it is clear enough that Mr. Gregorio has abandoned any stand-alone age discrimination claim. Accordingly, defendants' motion to dismiss Mr. Gregorio's age discrimination claim is **GRANTED**.[3]

---

[3] Even if Mr. Gregorio had not abandoned his age discrimination claim, the ministerial exception bars such a claim. Mr. Gregorio's allegation is that Mr. Hoover "forced him to retire because of his age," thereby ending his tenure as Pastor and Minister in Charge of Capital. Compl., ECF No. 1-1 ¶¶ 45-46. The age discrimination claim before the Court thus "is an employment discrimination [claim] brought on behalf of a minister, challenging [his] church's decision to fire [him]." *See Hosanna-Tabor*, 565 U.S. at 196. "[T]he ministerial exception bars such a [claim]." *See id.* That bar is in place because the Court's

**B.    Breach of Contract to Pay Mr. Gregorio a Stipend**

Mr. Gregorio asserts a claim that he calls "loss of wages," Compl., ECF No. 1-1 ¶¶ 23-26, or, alternatively, "lost revenue." Pl.'s Opp., ECF No. 11 at 7. This claim is based on the alleged promise that was made to Mr. Gregorio to provide him with a stipend of $1,500 per month. Compl., ECF No. 1-1 ¶ 11. Mr. Gregorio stopped receiving this stipend in October 2012. *Id.*

Defendants argue that Mr. Gregorio's claim for loss of wages should be barred by the ministerial exception. Defs.' Mem. Supp., ECF No. 7-1 at 8-10. Even if the ministerial exception poses no bar, defendants argue that the loss of wages claim should be dismissed because there is no District of Columbia cause of action for loss of wages. *Id.* at 26-27. And even if the Court construes Mr. Gregorio's claim as one for breach of contract, defendants argue that that claim should still be dismissed because Mr. Gregorio never alleges that defendants agreed to pay him any compensation, which is consistent with his

---

involvement in assessing the propriety of Mr. Gregorio's termination would improperly entangle the Court in "an internal church decision that affects the faith and mission of the church itself." *Id.* at 190; *see also Minker*, 894 F.2d at 1356-58 (affirming the dismissal of a minister's age discrimination claims on the ground that "evaluation of the 'gifts and graces' of a minister must be left to ecclesiastical institutions"). To the extent that Mr. Gregorio's argument is that he was never employed by Chesapeake as a minister such that the ministerial exception is inapposite, *see* Pl.'s Opp., ECF No. 11 at 9, 17-18, he does not offer any viable non-employment basis for maintaining an age discrimination claim.

repeated assertions that Capital is completely independent from Chesapeake. *Id.* at 27-28. Defendants assert that "the only reasonable inference" is that any promise to pay Mr. Gregorio was made by Capital, not by Chesapeake or Mr. Hoover. *Id.* at 28.

Because a court's determination of whether a plaintiff has stated a claim turns not on "labels and conclusions" or the "formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, but rather turns on whether a plaintiff has alleged "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *see Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), there is no reason to dismiss a claim merely because Mr. Gregorio affixes a misleading doctrinal label to it. *See Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858, 862 (D. Del. 1982) ("[I]f facts are pleaded which establish that recovery is warranted, a Court will apply the relevant theory even though not pleaded."). Accordingly, scrutinizing the factual allegations rather than the labels in the complaint, the Court appropriately construes Mr. Gregorio's loss of wages claim as one for breach of contract.

In the District of Columbia, the elements of a breach of contract claim are: "'(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Brown*

*v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). Defendants argue that there was no valid contract between them and Mr. Gregorio because Mr. Gregorio has not specifically alleged that defendants agreed to pay him a stipend and that "the only reasonable inference" is that Capital made that promise of a stipend. Defs.' Mem. Supp., ECF No. 7-1 at 27-28. This argument is unavailing. Mr. Gregorio alleges that he "was promised a stipend/allowance" of $1,500 per month. Compl., ECF No. 1-1 ¶ 11. Although it is not entirely clear who made that promise, on a motion to dismiss for failure to state a claim, the complaint is construed liberally in Mr. Gregorio's favor, and the Court should grant him the benefit of all inferences that can be derived from the facts that have been alleged. *See Kowal*, 16 F.3d at 1276. Accordingly, at this stage of proceedings, the Court infers that defendants promised to pay Mr. Gregorio for his services as Pastor and Minister in Charge and that they breached their duty to make that payment when they withheld payment starting in October 2012. *See* Compl., ECF No. 1-1 ¶ 11.

Defendants' argument that the ministerial exception bars this breach of contract claim is also unavailing. In *Minker*, the D.C. Circuit recognized that a "church is always free to burden its activities voluntarily through contracts, and such contracts

are fully enforceable in civil court." 894 F.2d at 1359. There, the court considered a breach of an oral employment contract claim asserted by a minister. *Id.* at 1359. The court recognized that "[i]t could turn out that in attempting to prove his case, [the minister] will be forced to inquire into matters of ecclesiastical policy even as to his contract claim." *Id.* at 1360. But in recognition of the possibility that "it may turn out that the potentially mischievous aspects of [his] claim . . . are subject to entirely neutral methods of proof," the court deemed dismissal premature. *Id.* The same analysis is warranted here. If it turns out that resolution of Mr. Gregorio's claim that defendants breached a contract to pay him a stipend requires excessive entanglement with religious doctrine, the Court can grant summary judgment in favor of defendants. *See id.* But because at this early stage it is not entirely clear that resolution of Mr. Gregorio's claim will require anything other than "neutral methods of proof," dismissal on ministerial exception grounds is not warranted. *See id.* Accordingly, defendants' motion to dismiss Mr. Gregorio's claim of breach of a contract to pay him a stipend is **DENIED**.

### C.   Breach of Contract to Convey Title to Real Property

Mr. Gregorio also asserts that defendants have breached a contract to convey title to the 3831 14th Street property to Capital. He acknowledges that "Chesapeake's name only" is on the

deed of trust and that "Chesapeake still holds the title" to the property in question. Compl., ECF No. 1-1 ¶¶ 7, 9. Even so, Mr. Gregorio alleges that Capital and Chesapeake "entered into an agreement" whereby Capital would repay the loan and Chesapeake would hold title until the loan was fully repaid. *Id.* ¶ 18. Upon repayment of the loan, Chesapeake was to "relinquish the title to the property to Capital." *Id.* ¶ 21.

Defendants argue that the Court lacks subject matter jurisdiction over this breach of contract claim. The first argument that defendants put under the subject matter jurisdiction heading is that because Capital is a component or subsidiary of Chesapeake, Chesapeake is the rightful owner of any real property in question, and thus Mr. Gregorio's claims related to that property are merely alternative characterizations of his underlying employment-related claims: *i.e.*, his age discrimination claim and breach of contract claim concerning the promised stipend. *See* Defs.' Mem. Supp., ECF No. 7 at 11-12. According to defendants, because those underlying employment-related claims should be barred due to excessive religious entanglement, the claims concerning real property should be similarly barred. *Id.* at 13.

This argument is unpersuasive. Even assuming that "Capital is a part of the Chesapeake District," *see id.* at 11-12, it is not clear why Capital's status as a subsidiary to Chesapeake

18

would deprive this Court of jurisdiction to resolve a claim of breach of contract brought on Capital's behalf. *See Stamp v. Inamed Corp.*, 777 F. Supp. 623, 628 (N.D. Ill. 1991) ("[A] subsidiary surely can sue its parent for breach of contract."). That is, even if Capital were a component of Chesapeake, that does not automatically bar claims brought against Chesapeake on Capital's behalf. Thus the claims concerning real property, including the breach of contract claim, cannot simply be reduced to and dismissed as alternative characterizations of Mr. Gregorio's employment-related claims. To the extent that defendants' argument is that it is impermissible for Mr. Gregorio to allege facts resembling an employment relationship to support his age discrimination claim and stipend contract claim, *see, e.g.*, Compl., ECF No. 1-1 ¶ 10 ("Hoover . . . appointed [Mr. Gregorio] as Minister in Charge of . . . Capital."), at the same time that he alleges facts suggesting Capital's independence from Chesapeake to support the claims concerning real property, *see, e.g.*, *id.* ¶ 8 ("The only assistance Chesapeake gave to Capital was to procure a loan . . . ."), that argument is unavailing. The Federal Rules "permit[ ] inconsistency in both legal and factual allegations . . . ." *Indep. Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997).

Defendants' second subject matter jurisdiction argument is no more persuasive. Defendants argue that the ecclesiastical abstention doctrine poses a jurisdictional bar to the Court's resolution of the breach of contract claim related to the 3831 14th Street property because, according to defendants, resolution of that claim will require the Court "to delve into the doctrinal beliefs of both Capital and the Wesleyan Church." Defs.' Mem. Supp., ECF No. 7-1 at 13. Specifically, defendants explain that the deed concerning the 3831 14th Street property states that the property is to be held by Chesapeake in trust for the use and benefit of the Wesleyan Church, which is "'subject to The Discipline.'" *Id.* at 16 (citing Deed, Ex. 1-A, ECF No. 7-3). The Discipline is the foundational document of the Wesleyan Church. *Id.* It explains the structure and administration of the Church and "sets forth the fundamental precepts and doctrinal beliefs to which the Church adheres." *Id.* Because the deed specifies that Chesapeake is to hold the property in trust for the benefit of the Wesleyan Church and that Church, in turn, is subject to The Discipline, that foundational text "control[s] every aspect of [Chesapeake's] ownership" of the 3831 14th Street property. *Id.* at 16-17. The Discipline states that Chesapeake can only convey real property "'as may be deemed necessary or convenient for the purpose of [Chesapeake].'" *Id.* at 17 (quoting The Discipline, § 4120(6),

Ex. 1-C, ECF No. 7-5). The "purpose" of Chesapeake, in turn, "'shall be religious, benevolent, charitable and educational in keeping with the purposes of The Wesleyan Church as set forth in its *Discipline*.'" *Id.* (quoting The Discipline, § 4120(2), Ex. 1-C, ECF No. 7-5). Defendants argue that because any conveyance of real property by Chesapeake must be consistent with the religious "purpose" of the Wesleyan Church, the Court is barred from resolving the breach of contract claim on religious entanglement grounds. *Id.* at 18-19. In sum, defendants argue that resolution of the breach of contract claim turns on whether conveyance of title to Capital would be consistent with the Wesleyan Church's religious principles and because that determination would involve a judicial assessment of religious doctrine, the Court is barred from resolving the breach of contract claim concerning the 3831 14th Street property.

Assuming defendants are correct that terms in The Discipline are relevant to resolution of a claim that Chesapeake breached a contract to convey title to Capital,[4] it is still not

---

[4] The relevant deed states that Chesapeake holds the 3831 14th Street property in trust for the Wesleyan Church and describes the Wesleyan Church as being "subject to The Discipline." *See* Deed, Ex. 1-A, ECF No. 7-3. But defendants have not relied on any case law or any other legal authority to support the proposition that The Discipline, by virtue of being mentioned as a governing document for the Wesleyan Church in the deed, necessarily constrains the sort of contracts Chesapeake can make concerning the real property. *See* Defs.' Mem. Supp., ECF No. 7-1 at 15-19. The Court's own research reveals that at least some

apparent that resolution of the claim would require the Court to assess religious doctrine or policy. The fulcrum of defendants' religious entanglement argument is the provision in The Discipline that states that Chesapeake can only convey property "as may be deemed necessary or convenient for the purpose of [Chesapeake]." The Discipline, § 4120(6), Ex. 1-C, ECF No. 7-5.[5] Defendants argue that this provision mandates that any contract to convey title must be consistent with the religious "purpose" of the Wesleyan Church and the Court, in making that assessment as part of the breach of contract analysis, would be impermissibly assessing religious doctrine. Not so. The provision does not require that any conveyance of real property actually be consistent with the Wesleyan Church's religious "purpose." Instead, it states that any conveyance must have been

---

other courts have "held that church regulations will be given legal effect even if they add to the statutory requirements for conveyancing." *See Greater Friendship A.M.E. Church v. Spann*, 336 So. 2d 1087, 1090 (Ala. 1976). In any event, because the Court is not convinced that resolution of the breach of contract claim concerning the real property will involve impermissible religious entanglement even if the terms of The Discipline are applicable, the Court assumes that those terms are applicable in its analysis.

[5] Mr. Gregorio argues that consideration of materials outside the pleadings warrants conversion of defendants' motion to dismiss to a motion for summary judgment. Pl.'s Opp., ECF No. 11 at 9-10. But because a "district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction," *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1253, it is appropriate for the Court to consider The Discipline and other materials when assessing defendants' jurisdictional ecclesiastical abstention arguments.

"*deemed* necessary or convenient" for that religious purpose by the appropriate individuals acting on Chesapeake's behalf. *Id.* (emphasis added). An assessment of whether Chesapeake *deemed* conveyance of its property to Capital necessary or convenient for its religious purpose is a neutral determination that would not involve the Court in determining what the Church's religious principles actually are. Thus, assuming the terms of The Discipline are relevant to this breach of contract claim, defendants have not demonstrated that resolution of that claim will require the Court to undertake an assessment of religious doctrine or policy. Again, to the extent that it becomes apparent that the Court would be required to make such an assessment as this case progresses, the Court at that time can grant summary judgment on the ground that resolution of the claim would create an excessive entanglement with religion. But, at this early stage, with that entanglement not yet apparent, dismissal on ecclesiastical abstention grounds would be premature.

Even if the breach of contract claim concerning the 3831 14th Street property is not barred on religious entanglement grounds, defendants offer various arguments as to why that claim should still be dismissed for failure to state a claim upon which relief can be granted. None of these arguments is availing.

First, defendants argue that Mr. Gregorio fails to state a claim because the deed to the property in question "conclusively shows that [Chesapeake] is the sole owner of the property." Defs.' Mem. Supp., ECF No. 7-1 at 23. Although the relevant deed does indicate that Chesapeake holds title to the 3831 14th Street property, *see* Deed, Ex. 1-A, ECF No. 7-3,[6] Mr. Gregorio's allegation is that Capital and Chesapeake entered into an agreement whereby Chesapeake would transfer title to Capital upon Capital's repayment of the WIF loan. Compl., ECF No. 1-1 ¶¶ 18-22. That defendants can point to a deed indicating that Chesapeake holds title thus does not mean that Mr. Gregorio has failed to state a claim that Chesapeake breached a contract to convey the title that it holds.

Second, defendants argue that Mr. Gregorio's allegations are insufficiently specific to state a claim, as they argue that Mr. Gregorio's allegations concerning the agreement to convey title to Capital never specifically state that Chesapeake "would transfer ownership of the property to Capital." *Id.* at 22. This argument fails because Mr. Gregorio alleges that defendants "have breached their agreement with Capital by refusing to

---

[6] Contrary to Mr. Gregorio's assertion otherwise, *see* Pl.'s Opp., ECF No. 11 at 9-10, the Court can properly consider a deed——a public record——without converting defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. *See George v. Bank of Am. N.A.*, 821 F. Supp. 2d 299, 301 n.5 (D.D.C. 2011).

relinquish the title to the property to Capital free and clear of any encumbrances." Compl., ECF No. 1-1 ¶ 21. To the extent that there is any doubt that this allegation sufficiently specifies that, pursuant to their agreement, Chesapeake would transfer title to Capital, the Court construes the allegation liberally in Mr. Gregorio's favor to conclude that he has alleged an agreement between Capital and Chesapeake whereby Chesapeake, as part of its end of the bargain, was to transfer title to Capital. *See Kowal*, 16 F.3d at 1276.

And third, defendants argue that because the alleged agreement concerns real property, Mr. Gregorio's failure to allege or produce a writing memorializing the agreement to convey title runs afoul of the statute of frauds. *Id.* at 23-24 (citing D.C. Code § 28-3502). They argue that that written agreement must be produced "at this time." *Id.* at 23. Defendants are correct that, subject to certain limited exceptions, the statute of frauds "mandates that certain agreements, including those concerning real estate, must be in writing to guard against perjury and protect against unfounded and fraudulent claims." *Railan v. Katyal*, 766 A.2d 998, 1007 (D.C. 2001) (internal quotation marks omitted). But defendants overlook that "[i]n order for an agreement to violate the statute of frauds on the face of the complaint, the plaintiff must indicate that the agreement is not written." *Pub. Health Equip. & Supply Co. v.*

*Clarke Mosquito Control Prods., Inc.*, 410 F. App'x 738, 741 (5th Cir. 2010). Mr. Gregorio's complaint gives no indication that the agreement is not written. Accordingly, it would be premature to dismiss the breach of contract claim concerning the 3831 14th Street property on statute of frauds grounds. Thus, defendants' motion to dismiss this claim is **DENIED.**

> **D.   Unjust Enrichment**

Mr. Gregorio also asserts claims of unjust enrichment. He alleges that defendants have been unjustly enriched by having Capital repay the WIF loan concerning the 3831 14th Street property while failing to convey title to that property to Capital upon complete repayment of the loan, and by having Capital repay the loan concerning the adjacent 3829 14th Street property. Compl., ECF No. 1-1 ¶¶ 27-31.

Defendants' arguments concerning the Court's subject matter jurisdiction as to these claims are the same as those that it offers regarding the claim of breach of contact concerning the 3831 14th Street property. *See* Defs.' Mem. Supp., ECF No. 7-1 at 11-20. The Court's response is likewise the same: At this stage, it is not apparent that resolution of the claims will involve impermissible religious entanglement. *See supra* Part III.C. Accordingly, at the present juncture, the Court can properly exercise jurisdiction over the unjust enrichment claims.

Under District of Columbia law, the elements of an unjust enrichment claim are: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (internal quotation marks omitted). Defendants' arguments as to why Mr. Gregorio has failed to state a claim of unjust enrichment based on the allegations that Capital repaid the loan related to the 3831 14th Street property and Chesapeake retained title to that property are the same arguments it offers as to why Mr. Gregorio has failed to state a claim of breach of contract concerning that property. *See* Defs.' Mem. Supp., ECF No. 7-1 at 22-24. Those arguments are just as unavailing in the unjust enrichment context as they are in the breach of contract context. Based on the allegations that Chesapeake has retained title to a property even though Chesapeake promised to convey title to Capital upon repayment of the relevant loan, Mr. Gregorio has stated a claim of unjust enrichment: Capital has conferred a benefit on Chesapeake that Chesapeake has retained and, in light of the agreement to convey title to Capital upon full repayment of the loan, it would be unjust for Chesapeake to retain the title. Accordingly,

defendants' motion to dismiss this unjust enrichment claim is **DENIED**.[7]

Mr. Gregorio has, however, failed to state a claim of unjust enrichment regarding Capital's repayment of the loan related to the 3829 14th Street property. As defendants correctly explain, *see id.* at 25-26, Mr. Gregorio has failed to allege any facts that suggest that defendants' retention of the benefit deriving from Capital's repayment of the loan concerning the 3829 14th Street property is unjust. Mr. Gregorio alleges that "Capital and Chesapeake entered into a special arrangement whereby the property would be owned by Chesapeake, but Capital would be responsible for payment of the [p]romissory [n]ote on the property." Compl., ECF No. 1-1 ¶ 17. While making these payments might have entitled Capital and Mr. Gregorio to "use and control over the property," he does not allege that the payments entitled them to anything beyond that use and control.

---

[7] Although "there can be no claim for unjust enrichment when an express contract exists between the parties," *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997), "[c]ourts in this District have found that a plaintiff should be permitted to plead both breach of contract and unjust enrichment." *The Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F. Supp. 2d 39, 44 (D.D.C. 2009). Accordingly, Mr. Gregorio may go forward with both the breach of contract and unjust enrichment claims concerning the 3831 14th Street property. This conclusion is in the interest of justice, as concluding otherwise could leave him "without any remedy should the fact-finder determine at a later stage that there was no express agreement between the parties." *See id.*

*See id.* Given that Mr. Gregorio and Capital ceased making the payments when they were deprived of use and control of the property, *id.*, there does not appear to be any injustice in permitting Chesapeake to retain the benefit of the payments that were made. That is, payments were made for as long as use and control of the property was permitted, and payments ceased when that use and control was forbidden. Because Mr. Gregorio has not adequately pled the third element of his unjust enrichment claim concerning the 3829 14th Street property, defendants' motion to dismiss that claim is **GRANTED**.

### E.   Wrongful Eviction

Mr. Gregorio also asserts a claim of wrongful eviction. He alleges that defendants wrongfully evicted him when they changed the locks on the buildings on the 3829 and 3831 14th Street properties such that he was unable to access those buildings. *Id.* ¶¶ 32-36.

Defendants' arguments concerning subject matter jurisdiction as to this claim are the same as those that it has put forth regarding the other real property-related claims, and the Court's response to these arguments remains the same: At this stage, it is not apparent that resolution of the claim will involve impermissible religious entanglement. *See supra* Part III.C. Accordingly, at this stage of the proceedings, the Court

can properly exercise jurisdiction over the wrongful eviction claim.

In the District of Columbia, "[i]n order to establish wrongful eviction, a tenant must prove that the landlord performed some act of a permanent character with the intention and effect of depriving the tenant of the enjoyment of the demised premises or a part thereof." *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 101 (D.C. 2007) (internal quotation marks omitted). Moreover, "a landlord is prohibited from using self-help to evict a tenant and must proceed instead by using the process provided by law." *Id.* at 102. This prohibition of self-help eviction applies even outside the context of a residential tenancy. *See Sarete, Inc. v. 1344 U Street Ltd. P'ship*, 871 A.2d 480, 489-90 (D.C. 2005). Defendants argue that Mr. Gregorio has failed to state a claim of wrongful eviction because he has not sufficiently established an ownership interest or tenancy as to the properties in question. Defs.' Mem. Supp., ECF No. 7-1 at 24-25. They emphasize that Mr. Gregorio "does not allege the existence of a lease or any other legal document that would give him a right to use or occupy the property." *Id.* at 25.

Defendants' argument here is unavailing. "[T]he D.C. Court of Appeals has left open the possibility that a cause of action for wrongful eviction may nonetheless be available to an

individual who has 'something less than some sort of tenancy.'"
*Mitchell v. Eastern Sav. Bank, FSB*, 890 F. Supp. 2d 104, 108
(D.D.C. 2012) (quoting *Sarete*, 871 A.2d at 494). Thus
defendants' argument that Mr. Gregorio's wrongful eviction claim
must fail because, according to defendants, he was neither an
owner nor a tenant does not have much traction at the motion to
dismiss stage. Mr. Gregorio's status vis-à-vis the properties in
question can be more concretely determined following discovery
and, accordingly, dismissal of the wrongful eviction claim at
this stage would be premature. *See id.* at 108-09.

Additionally, even assuming a tenancy——and not just
"something less than some sort of tenancy"——is required to
sustain a District of Columbia wrongful eviction claim, Mr.
Gregorio has alleged facts that support the existence of a
tenancy. Whether he and Capital were tenants "depends upon the
circumstances surrounding the use and occupancy of the
property." *See Young v. District of Columbia*, 752 A.2d 138, 143
(D.C. 2000). Those circumstances include the existence of "a
lease agreement, the payment of rent and other conditions of
occupancy between the parties." *See id.* Moreover, "certain
tenancies may arise by oral agreement of the parties." *Id.* at
142. Defendants point out that Mr. Gregorio has not alleged the
existence of a lease agreement, Defs.' Mem. Supp., ECF No. 7-1
at 25, but, as concerns the 3829 14th Street property, Mr.

Gregorio alleges that "Capital and Chesapeake entered into a special arrangement whereby the property would be owned by Chesapeake, but Capital would be responsible for payment of the [p]romissory [n]ote on the property." Compl., ECF No. 1-1 ¶ 17. Payment of that note entitled Capital to the "exclusive use and control over the property on a day to day basis." *Id.* The arrangement Mr. Gregorio describes in his complaint sounds very much like a landlord-tenant relationship. Defendants seem to admit as much when they note that "[o]n the face of the [c]omplaint, it seems that Plaintiff allegedly paid [Chesapeake] in exchange for use of the property." Defs.' Mem. Supp., ECF No. 7-1 at 26. Because a wrongful eviction might be sustained based on "something less than some sort of tenancy" and because it appears that a tenancy may have existed here, defendants' motion to dismiss Mr. Gregorio's wrongful eviction claim is **DENIED**.

### F. Defamation

Mr. Gregorio also asserts a claim of defamation. He argues that defendants defamed him when they disseminated a letter to law enforcement officers in the District of Columbia and Maryland that stated that he "had made illegal and unauthorized entry onto the properties." Compl., ECF No. 1-1 ¶ 38; Pl.'s Opp., ECF No. 11 at 7-8.

Defendants argue that this Court lacks subject matter jurisdiction over the defamation claim under the ecclesiastical

32

abstention doctrine because they plan on asserting the defense of truth to the defamation claim and, according to defendants, determining the truth regarding the ownership of the properties in question will impermissibly implicate this Court in matters of religious doctrine and policy. Defs.' Mem. Supp., ECF No. 7-1 at 20. This argument is unpersuasive. For the reasons already stated above, *see supra* Part III.C, the Court is not convinced that resolving the real property-related claims will necessitate inappropriate judicial meddling in religious matters. Accordingly, at this juncture, the defamation claim is not barred on religious entanglement grounds.

"To state a cause of action for defamation, plaintiff must allege and prove four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (internal quotation marks omitted). Defendants argue that Mr. Gregorio has failed to state a claim of defamation because their statements, having been made to law enforcement authorities, were protected by a qualified privilege. Defs.' Mem. Supp., ECF

No. 7-1 at 29 (citing *Carter v. Hahn*, 821 A.2d 890, 894 (D.C. 2003)). Defendants argue that, given the applicable qualified privilege, their statements can only give rise to a defamation claim upon a showing of malice. *Id.* (citing *Carter*, 821 A.2d at 894). They assert that a showing of malice requires that they knew the statements they made were false or that they acted with reckless disregard as to the truth or falsity of the statements that they made. *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 327-28 (1974)). Because Mr. Gregorio has not alleged facts "sufficient to support a finding of malice," defendants argue that Mr. Gregorio's defamation claim must be dismissed. *Id.* at 29-30.

Defendants correctly explain that "a qualified privilege exists when a statement about suspected wrongdoing is made in good faith to law enforcement authorities." *See Columbia First Bank v. Ferguson*, 665 A.2d 650, 655 (D.C. 1995). They also correctly explain that the qualified privilege is lost upon a showing of malice. *See id.* at 656. But they misunderstand what is meant by "malice." The actual malice standard that they describe——*i.e.*, whether the statements were made with knowledge that they were false or with reckless disregard of whether they were false or not——"is not to be confused with the common law concept of 'malice.'" *Montgomery v. Risen*, No. 16-126, 2016 WL 3919809, at *28 (D.D.C. July 15, 2016). That common law concept

of malice——"a showing of ill will," *id.* (internal quotation
marks omitted)——is what applies in the context of a District of
Columbia defamation claim. *Columbia First Bank*, 665 A.2d at 656
(describing "malice as it relates to qualified privilege in
defamation cases" as "ill will"). Thus, defendants' arguments
concerning what Mr. Gregorio has alleged about what they knew
are largely inapposite. Instead, whether defendants acted with
malice turns on their motivations: If they disseminated the
statements with reckless disregard as to Mr. Gregorio's feelings
such that it could be said that they acted with ill will, then
they acted with malice sufficient to overcome the applicable
qualified privilege. *See id.*

Mr. Gregorio has made allegations sufficient to support a
finding of malice. At this stage, the Court must accept as true
all of Mr. Gregorio's allegations. *See Atherton*, 567 F.3d at
681. Thus the Court accepts as true the allegation that
Chesapeake contracted with Capital to convey title to the 3831
14th Street property to Capital upon repayment of the WIF loan
but then refused to honor that contract. Compl., ECF No. 1-1 ¶¶
17-22. That allegation alone is sufficient to support the
conclusion that defendants acted with ill will——that is, common
law malice——when they disseminated a letter to law enforcement
authorities stating that Mr. Gregorio was illegally accessing
that property. Thus defendants' argument that the defamation

35

claim must be dismissed on the basis of qualified privilege is unavailing.

Defendants' other argument——that because they "have established the truth of their allegedly defamatory statements, [Mr. Gregorio] cannot prevail on his claim for defamation," Defs.' Mem. Supp., ECF No. 7-1 at 30——is also unavailing. Based on his allegations, Mr. Gregorio has stated a claim that Chesapeake breached a contract to convey title to the 3831 14th Street property to Capital, *see supra* Part III.C, so defendants have not yet established that they disseminated a truthful statement when they told law enforcement authorities that Mr. Gregorio was illegally accessing that property. Defendants' motion to dismiss Mr. Gregorio's defamation claim is thus **DENIED**.

### G.   Claims Against Mr. Hoover in His Individual Capacity

Defendants argue that to the extent that Mr. Gregorio has stated claims against Chesapeake, his claims against Mr. Hoover in his individual capacity should still be dismissed. Defs.' Mem. Supp., ECF No. 7-1 at 32-33. Under District of Columbia law, corporate officers can be personally liable for wrongful acts "'which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation.'" *Perry ex rel. Perry v. Frederick Inv. Corp.*, 509 F. Supp. 2d 11, 18 (D.D.C. 2007) (quoting *Lawlor v. District of Columbia*, 758

A.2d 964, 974 (D.C. 2000)). That individual liability "must be premised upon a corporate officer's meaningful participation in the wrongful acts . . . [which] can exist when there is an *act or omission* by the officer which logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense." *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 9 (D.D.C. 2009) (internal quotation marks omitted). Defendants argue that Mr. Gregorio "has failed to allege that [Mr.] Hoover meaningfully participated in the purported wrongful acts" other than age discrimination.[8] Defs.' Mem. Supp., ECF No. 7-1 at 32. Instead, Mr. Gregorio's complaint alleges in generalized fashion that "Hoover and Chesapeake" or "Defendants" committed the alleged wrongful acts. *Id.* Accordingly, defendants assert, the breach of contract, unjust enrichment, wrongful eviction, and defamation claims must be dismissed as to Mr. Hoover in his individual capacity. *Id.* at 32-33.

Defendants are correct that Mr. Gregorio has made allegations that generally refer to "Defendants" or "Hoover and Chesapeake," rather than making allegations that specify the

---

[8] Because Mr. Gregorio has abandoned his age discrimination claim and because, in any event, that claim is barred by the ministerial exception, *see supra* Part III.A, the Court need not address Mr. Hoover's potential individual liability as to that claim. That claim is dismissed as to both Chesapeake and Mr. Hoover.

exact acts or omissions of Mr. Hoover. *See, e.g.*, Compl., ECF
No. 1-1 ¶¶ 26("The Defendants refusal to compensate Plaintiff
for his services since 2012 has resulted in a loss of wages . .
. ."), 38 ("Hoover and Chesapeake . . . circulated a letter
containing materially false and damaging information . . . ."").
But this somewhat generalized pleading style does not warrant
dismissal of the various claims as to Mr. Hoover in his
individual capacity. Mr. Gregorio need "not *prove*[ ] [Mr.
Hoover's] involvement in the alleged violations" at the motion
to dismiss stage. *See Cooper v. First Gov't Mortg. & Inv'rs
Corp.*, 206 F. Supp. 2d 33, 36 (D.D.C. 2002). Rather, Mr.
Gregorio is "entitled to offer evidence at a later time to
support these claims." *See id.* Accordingly, the motion to
dismiss the claims against Mr. Hoover in his individual capacity
is **DENIED**.

## IV.  Conclusion

For the reasons stated above, defendants' motion to dismiss
is **GRANTED IN PART** and **DENIED IN PART**. Mr. Gregorio's age
discrimination claim and the unjust enrichment claim concerning
the 3829 14th Street property are hereby dismissed. All
remaining claims shall proceed against both defendants. An
appropriate Order accompanies this Memorandum Opinion.

SO ORDERED.

**Signed:   Emmet G. Sullivan**

**United States District Judge**
**February 28, 2017**